UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
KENNETH HERBST,

                Plaintiff,

                                      **MEMORANDUM AND ORDER**

                                        CV-11-6193 (DRH) (ETB)

      -against-

UNITED STATES POSTAL SERVICE,
PATRICK R. DONAHOE, Postmaster General and
Chief Executive Officer, both individually and in his
official capacities; DAVID C. WILLIAMS,
INSPECTOR GENERAL, both in his official
capacity and individually; DANITA DEVAUL, in
her official capacity and individually; JOHN DOE
and/or JANE DOE, fictitious persons yet to be
identified

                          Defendants.
----------------------------------------------------X

**APPEARANCES**

**For the Plaintiff:**
RANNI LAW FIRM
148 North Main Street
Florida, NY 10921
By:    Joseph James Ranni

**For the Defendants United States Postal Service, Patrick R. Donahoe, David C. Williams, and Danita DeVaul:**
UNITED STATES ATTORNEYS OFFICE
610 Federal Plaza
Central Islip, NY 11722
By:    Diane C. Leonardo-Beckmann

1

**HURLEY, Senior District Judge**:

On December 21, 2011, plaintiff Kenneth Herbst ("plaintiff") initiated this action against the United States Postal Service ("USPS"), Patrick R. Donahoe ("Donahoe"), David C. Williams ("Williams"), Danita DeVaul ("DeVaul"), and John Doe and/or Jane Doe ("Doe") (collectively, "defendants"), alleging constitutional violations under 42 U.S.C. § 1983 and causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress. In the Complaint, plaintiff asserted each claim against the defendants in both their official and individual capacities.

Presently before the Court is defendants' motion to dismiss plaintiff's suit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). For the reasons set forth below, the Court grants defendants' motion to dismiss.

## *BACKGROUND*

The following facts are taken from the Complaint, and assumed true for purposes of this motion. Plaintiff was employed by the USPS as an auto technician at the Vehicle Maintenance Facility ("VMF") in Hicksville, New York. (Compl. ¶ 11.) In the course of his employment, plaintiff made various complaints alleging fraud, workplace safety violations, theft, discrimination, retaliation, violations of USPS policies and procedures, and other violations of law to supervisors, managers, the Inspector General, and other government officials. (Compl. ¶¶ 13-14.) Plaintiff claims that he "suffered negative employment acts related to and/or in retaliation for such complaints." (Compl. ¶ 15.) In particular, plaintiff claims that on December 23, 2008, DeVaul, a postal inspector, went

to the VMF in response to an anonymous report concerning plaintiff.[1] (Compl. ¶ 16.) DeVaul placed plaintiff into custody and under arrest "and engaged in conduct that deprived Plaintiff Herbst of his Constitutional rights, resulting in among other things, Plaintiff Herbst being involuntarily committed to a psychiatric hospital." (*Id*.) At no time did anyone advise plaintiff of his rights or the purpose of DeVaul's actions. (*Id*.)

Plaintiff was released from the psychiatric hospital on December 24, 2008. (*Id*.) Subsequently, he was suspended from employment, and on January 8, 2009, the USPS issued an "Emergency Placement in Off-Duty Status," removing plaintiff from employment. (Compl. ¶ 18.) The USPS then commenced termination proceedings and other disciplinary actions against plaintiff. (*Id.*)

Defendant Donahoe is the Postmaster General and Chief Executive Officer of the USPS. (Compl. ¶ 3.) Defendant Williams is the Inspector General of the USPS. (Compl. ¶ 4). Plaintiff claims that defendants Donahoe and Williams were "responsible for providing a workplace free from retaliation, discrimination and the deprivation of Constitutional rights." (Compl. ¶ 20.)

Plaintiff alleges three causes of action against defendants. First, plaintiff asserts that "defendants' discriminatory treatment of plaintiff, was in violation of 42 U.S.C. § 1983." (Compl. ¶ 23.) Second, plaintiff alleges that defendants' treatment of plaintiff constituted intentional infliction of emotional distress. (Compl. ¶ 28). Third, plaintiff alleges that defendants' treatment of plaintiff constituted negligent infliction of emotional distress. (Compl. ¶ 32.)

---

[1] The anonymous source is referred to in plaintiff's Complaint as "John and/or Jane Does." (Compl. ¶ 7.) Neither the Complaint nor any other document in the record indicates the specific content of Doe's report.

3

## DISCUSSION

**I.     *Standard of Review***

A defendant may move to dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff has the burden to prove subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept all facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Makarova*, 201 F.3d at 113. The court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue. *Id.*

**II.     *42 U.S.C. § 1983 Claims***

Claims brought pursuant to 42 U.S.C. § 1983 apply "only to actions taken under the color of state law that violate constitutional or federal statutory rights." *Yalkut v. Gemignani*, 873 F.2d 31, 35 (2d Cir. 1989); *see also Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005). It is well established that claims brought pursuant to § 1983 do not apply to actions against the federal government or its officers. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

In this case, defendants' alleged discriminatory conduct constitutes action under color of federal law because the USPS is a federal agency and defendants DeVaul, Donahoe, and Williams all acted pursuant to their duty as federal officers of the USPS. Moreover, none of the allegedly discriminatory conduct involved actions taken under

4

color of state law. Accordingly, the plaintiff's claims under § 1983 against defendants are precluded as a matter of law.

### III. *Bivens* Claims

Although plaintiff pleads only that defendants violated his rights under § 1983, the Court will interpret the complaint liberally to allege a cause of action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). *See Robinson*, 21 F.3d at 510; *Spinale v. U.S. Dept. of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [*Bivens*].").

"In *Bivens*, the Supreme Court recognized as implicit in the rights guaranteed by the Fourth Amendment a cause of action for money damages against federal officials, sued in their individual capacities, who had allegedly violated those rights." *Dotson*, 398 F.3d at 165-66; *Bivens*, 403 U.S. at 397. Subsequently, the Supreme Court in *F.D.I.C. v. Meyer* declined to extend *Bivens* to permit claims against federal agencies, noting that the doctrine of sovereign immunity precludes such claims. *See* 510 U.S. 471, 486, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). Therefore, plaintiff cannot proceed with his claim against the USPS, and the only plausible constitutional claim available to plaintiff would be a *Bivens* claim against the defendants in their individual capacities.

The Supreme Court has continued to limit the application of *Bivens* and advised that "the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in

5

'new contexts.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001)). In *Carlson v. Green* the Supreme Court also held that courts should not permit a *Bivens* claim when there are "special factors counseling hesitation in the absence of affirmative action by Congress," or "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." 446 U.S. 14, 18, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).

One of the special factors that counsels hesitation in permitting a *Bivens* remedy is the "comprehensiveness of available statutory schemes" to remedy a plaintiff's injury. *Arar*, 585 F.3d at 573; *see Bush v. Lucas*, 462 U.S. 367, 388 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983). Furthermore, even if Congress has enacted a statutory scheme that does not fully remedy the alleged harm, the scheme may nonetheless preclude a *Bivens* claim. *Schweiker v. Chilicky*, 487 U.S. 412, 428-29, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988) (finding that even though Congress may not have enacted "the best response" to remedy state's wrongful termination of disability benefits, *Bivens* claim was precluded). It is the "overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson*, 398 F.3d at 166-67.

For example, the Supreme Court has recognized that the Civil Service Reform Act ("CSRA"), scattered throughout Title Five of the United States Code, "establish[es] a comprehensive system for reviewing personnel action taken against federal employees," precluding a *Bivens* claim on the employee's behalf. *United States v. Fausto*, 484 U.S. 439, 455, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988). Specifically, the CSRA provides a

6

remedy for federal employees whose employers have engaged in adverse employment actions listed in Chapter 75 of the CSRA, including suspension or removal. *See* 5 U.S.C. § 7511. Chapter 75 also describes the system of administrative and judicial review afforded to an aggrieved employee. *Id*. §§ 7511-14.

The courts have upheld the comprehensiveness of the CSRA and precluded *Bivens* claims even for plaintiffs who do not qualify for administrative or judicial review under the CSRA. For example, in *United States v. Fausto*, the Supreme Court held that "the deliberate exclusion of employees … from the provisions [of the CSRA] establishing administrative and judicial review for personnel action" precluded judicial review. 484 U.S. at 455. Similarly, in *Dotson*, the Second Circuit found that "[t]he unavailability of judicial review under the CSRA for certain employment grievances cannot be deemed 'inadvertent,'" and it did not permit a *Bivens* claim even when the plaintiff was ineligible for judicial or administrative review under the CSRA. 398 F.3d at 167-68.

Similarly, courts have held that the Postal Reorganization Act (PRA), 39 U.S.C. §§ 1001-1011, 1201-1209, creates a remedial scheme specifically governing personnel procedures for aggrieved postal workers and prevents postal workers from bringing *Bivens* claims. *See Turner v. Holbrook*, 278 F.3d 754, 757-58 (8th Cir. 2002) (holding that postal employee's sole remedy for alleged violations of First, Fourth and Fifth Amendment rights was the PRA). Several portions of the PRA support this proposition. For example, the PRA provides that the Postal Service shall establish procedures guaranteeing its employees "an opportunity for a fair hearing on adverse actions, with representatives of their own choosing." 39 U.S.C. § 1001(b); *Bennett v. Barnett*, 210 F.3d 272, 275 (5th Cir. 2000). In addition, through § 1206(b) of the PRA "Congress

7

expressly authorized the USPS to adopt comprehensive binding arbitration provisions in its collective bargaining agreements between the USPS and its employees" to address constitutional claims arising from the employment relationship. *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991). Furthermore, § 1005(a) of the PRA mandates that Chapter 75 of the CSRA entitles officers and employees of the Postal Service "to avail themselves of the CSRA's procedures for administrative and judicial review of adverse personnel actions" when not inconsistent with the procedures established by the USPS or any collective bargaining agreement. *Bennett*, 210 F.3d at 275 (citing 39 U.S.C. § 1005); *see also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 940 F.2d 704, 708 (D.C. Cir. 1991) ("The PRA incorporates portions of the CSRA, an 'elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations'") (quoting *Bush*, 462 U.S. at 388).

Here, the remedial scheme prescribed by the PRA and the portions of the CSRA it adopts constitute a "comprehensive statutory scheme," to address plaintiff's constitutional claims arising from his employment with the USPS. *See Turner*, 278 F.3d at 757-58; *Moore v. U.S. Postal Serv.*, 2005 WL 165386, at *10 (N.D.N.Y. Jan. 13, 2005) ("The CSRA and PRA are the sole remedial schemes and provide the exclusive statutory avenues by which postal employees may dispute adverse personnel actions."). Therefore, the plaintiff cannot maintain a *Bivens* claim.

The Court finds unavailing plaintiff's argument that "[t]he CSRA's remedial scheme of review does not apply to the Plaintiff" because the CSRA requires him to present his claim to the whistleblower disclosure unit of the Office of Special Counsel, and that unit has no jurisdiction over postal workers. (*See* Pl.'s Mem in Opp'n to Mot. to

8

Dismiss at 10-11.) Putting aside whether plaintiff's reading of the CSRA is accurate, as discussed above, the PRA and the portions of the CSRA it incorporates are a comprehensive scheme enacted by Congress to address plaintiff's claims precluding a *Bivens* claim. As a result, whether the PRA and CSRA apply to plaintiff and provide plaintiff with an adequate remedy for his claims is not a question for this Court because in the face of a comprehensive statutory scheme "the courts will not act to create additional judicial remedies even where a particular litigant does not have a remedy available under the statutory scheme." *Pipkin*, 951 F.2d at 275 (citing *Fausto*, 484 U.S. at 455); *Dotson*, 398 F.3d at 167-68.

Accordingly, this Court lacks subject matter jurisdiction over plaintiff's constitutional claims against defendants in their individual capacities, and plaintiff's claims are dismissed with prejudice.

**IV.** *Tort Claims*

As the Court has previously noted, the doctrine of sovereign immunity generally precludes suit against the federal government and its agencies. *Meyer*, 510 U.S. at 475. In passing the Federal Torts Claim Act ("FTCA"), however, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees." *Id*. The FTCA provides that a suit against the United States is the exclusive remedy for injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). In other words, the FTCA provides individual government employees immunity from common law tort claims if the allegedly tortious conduct occurred within the scope of their employment. *Rivera v. United States*, 928 F.2d 592, 608 (2d Cir.

9

1991).  Additionally, the FTCA requires that before bringing suit "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail," otherwise known as the exhaustion requirement.  28 U.S.C. § 2675(a); *see McNeil v. United States*, 508 U.S. 106, 112-113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993).

Here, the USPS, as an executive branch of the federal government, "enjoys federal sovereign immunity."  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006).  Furthermore, the FTCA precludes plaintiff's claims against the individual defendants because the conduct for which plaintiff seeks relief occurred within the scope of the defendants' employment at the USPS.  Therefore, suit against the United States is the exclusive remedy for plaintiff's tort claims.  *Rivera*, 928 F.2d at 609.

The plaintiff, however, failed to satisfy the portion of the FTCA requiring him to exhaust his administrative remedies.  *See* 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 112-113.  To satisfy the exhaustion requirement, a plaintiff must present a claim to the appropriate federal agency, and allege a specific dollar amount of damages—a "sum certain"—in the administrative complaint.  28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ."); *see also Adams v. U.S. Dep't of Hous. And Urban Dev.*, 807 F.2d 318, 320-21 (2d Cir. 1986).  This requirement is solely jurisdictional in nature, and cannot be waived.  *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

In this case, plaintiff failed to exhaust his administrative remedies prior to filing the Complaint. In his brief, plaintiff points to numerous letters he sent to his supervisors within the USPS and various congressmen. These letters, however, provide no evidence that he submitted a Standard Form 95 to any federal agency alleging any tortious conduct. (*See* Pl.'s Ex. 3). The declaration of Kimberly Herbst, the Tort Claims Examiner/Adjudicator for the USPS further establishes that plaintiff failed to exhaust his administrative remedies. (*See* Decl. of Kimberly A. Herbst.) As Ms. Herbst explains, "[t]he Law Department maintains an internal database that contains a listing of most claims filed against the [USPS] for damage, injury, or death," and "[t]he only claims that are not listed in this database system are claims for loss that are settled at the local level by a Torts Claims Coordinator." (*Id.* ¶ 3.) Ms. Herbst, however, conducted a search of the Law Department's database and found no evidence of a claim by Kenneth Herbst. (*Id.* ¶¶ 3-4.) Similarly, she searched a separate database maintained by the Postal Service containing information on claims settled at the local level and found no claims by Kenneth Herbst. (*Id.* ¶¶ 5-6.)

Furthermore, even if any of plaintiff's letters could be construed as "a written notification of an incident" to an appropriate agency, there is no evidence that plaintiff included a sum certain in any of these communications. The failure to include a sum certain precludes a finding of administrative exhaustion. *See Adams*, 807 F.2d at 320-21. Accordingly, plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress must be dismissed for lack of subject matter jurisdiction.

## *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss each claim for lack of subject matter jurisdiction under Rule 12(b)(1) is granted with prejudice.

**SO ORDERED.**

Dated: Central Islip, New York
July 16, 2013

/s/

Denis R. Hurley
United States District Judge